Good morning, Your Honor. Good morning. May it please the Court. My name is Kyle Schnitzer. I represent appellant Richard Brett Frederking in this insurance coverage dispute. As the Court probably knows, I've reserved five minutes for rebuttal. This Court need only answer one question to resolve this appeal today. Is a motor vehicle wreck caused by a drunk driver an accident under Texas law? I'd like to begin by briefly speaking about why, procedurally speaking, that is the one issue that this Court faces today, and then spend the balance of my time explaining why the answer to that question is yes, a motor vehicle wreck caused by a drunk driver, even a grossly negligent drunk driver, is an accident under Texas law because that is what the typical consumer of liability insurance would understand the term accident to commonly mean. Procedurally speaking first, as the Court's aware, Cincinnati briefed three grounds for a summary judgment below and has re-urged all three of those grounds in its response here today. Two of those grounds were based on the policy language. The first, of course, is the accident definition dispute that we have here today. The other was policy language dispute concerned the permissive use, whether or not Mr. Sanchez, the tortfeasor, had permission to use the insured vehicle. And then a third argument from outside the policy language, notwithstanding what the policy says, is the public policy of Texas nonetheless preclude coverage. The Texas Supreme Court in Fairfield laid out how you handle a multi-ground insurance coverage dispute like this. First, you analyze whether or not the policy language covers the dispute at all, and only then do you move on to consider the public policy question, assuming that there was a finding of coverage below. Procedurally speaking, we agree with what the district court did in this case. It was correct to first consider the accident issue, and though we certainly disagree with the resolution of that issue, it was also correct to terminate its analysis there. There was only one decision made at the district court level. The district court, in its opinion, expressly declined to reach either of the other two arguments. Are you saying it would have been impermissible for the district court to analyze the insured question? Impermissible, Your Honor? No. Just in terms of what the Texas Supreme Court has directed courts to do is to consider the policy language argument first, and the district court, we believe, was correct to follow that guidance. But the fact of the matter is, the district court didn't reach any other issue. It expressly said it didn't reach any other issue. No, I understand, but what's to preclude us? Are you saying that it's impermissible for us to do the insured issue? No, Your Honor. Impermissible? No, Your Honor. This court, generally speaking, of course, is a court of review, not a court of first impression, because there was only the one issue reached below. It's certainly our position that the general rule applies, and you shouldn't... So you're saying you want us to reverse on accident and remand on the other two issues. Is that what it is? Yes, Your Honor. Okay. And we think that's consistent with what this court has done before in insurance coverage briefs, the Minter line of cases. And, of course, the one that they rely on most heavily is an unreported decision by this court in 2010 holding that a drunk driver public policy precluded coverage in that case. Let me just... Well, let's start off with the... Instead of trying to explain to us why we should address accident, explain to us why Texas law precludes covering this as an accident, or why Texas law ought to cover it, excuse me, in light of Cowen and the gross negligence finding of the jury. Yes, Your Honor. I'd be happy to. Thank you. Accident in Texas fundamentally refers to unintentional conduct. In Wessinger, which quoted or relied on the analysis in Argonaut, the first step is you look to the specific injury-causing acts. If those specific injury-causing acts are unintentional, then you have an accident, period, end of analysis. The courts have further explained that even a deliberate act performed negligently is an accident so long as the result of that conduct isn't intended or expected. The case law uses language such as natural, unexpected, and things of that nature. But with respect, those standards have a connotation of a certain inevitability or direct result without any intervening contingent action involved. A deliberate act that is performed negligently and would have been different but for the same reason is an accident under Texas law. Well, then again, I mean, you know, Judge Rodriguez is no slouch on these kinds of matters and he says the Fifth Circuit has held a deliberate act is not an accident if the resulting damage was highly probable because it was a natural, unexpected result or the insurer, well, that's relevant. And then he says Sanchez was found grossly negligent. It's defined as an actor omission which when reviewed objectively from the standpoint of the actor involves an extreme degree of risk considering the probability of magnitude of potential harm of which he has actual subjective awareness. Now he basically admitted that, didn't he, during the trial? Your Honor, I don't But in any case, that's what the jury found. The jury found that Mr. Sanchez was grossly negligent. Your Honor raised two points that I think are very important. It absolutely is Fifth Circuit precedent using the language highly probable. I think it's worth considering what highly probable actually means. Probable means more likely than not. Highly probable necessarily means Even more. Something more than more likely than not. That's not what you have in a gross negligence case or a drunk driving case. It's not the case that a drunk driver is literally more likely than not on any given drive going to cause a wreck. What you have in a gross negligence drunk driving case is that the risk that the driver will cause a wreck is substantially higher than that of a normal driver, higher to a degree that's unreasonable in society and therefore you can hold them grossly negligent. It doesn't mean that there was a finding that a wreck or the failure to yield the right of way or some other negligent act of driving inevitably follows and therefore causes a wreck. It's possible that the deliberate act of driving while intoxicated can be done correctly in the sense that the driver can make it home safely. Do you have authority from other jurisdictions for that? I don't, Your Honor. If the court's interested in seeing those, I would certainly be. Well, it just amazes me that there seems to be not a lot of clear precedent on the subject. We went to some of the treatises and the treatises are even not, you know, definitive. Your Honor, I think our position would be that that shows the novelty of this position that the Cincinnati is taking. That you have cases like Tanner, which we've certainly cited and yes, that involves an accident, you know, an intentional ex-exclusion, but the language behind that is very powerful and directly applicable to this case. Reading insurance coverage so that a reckless act or a grossly negligent act absent deliberate injury is sufficient to forfeit coverage would render insurance coverage illusory for many of the insurance, commonly purchased insurance. The rest of the quote is, you know, in the brief. I don't need to, you know, recite it here for the court, but there's an expectation for a liability insured that these sorts of things are covered. The general common understanding of the word accident is that it includes acts caused by drunk drivers absent that intent. That's really the gist of the position, Your Honor. As the court knows, our brief was shorter than usual length because we think that's, you know, really the one issue this court needs to resolve. I'm happy to answer any other questions that the court has. Well, why should the state of Texas cover punitive damages in insurance policies? If the court decides to reach that question, of course, Fairfield is the seminal case that's answering, you know, this court certified question. I think it's important to distinguish the majority opinion in Fairfield from the concurrence in Fairfield by Chief Justice Hecht, which had stronger language in it. The majority in Fairfield was very hesitant on this balancing test because the public policy in Texas enforcing contracts as written is so strong. What you have here is a sophisticated insured, certainly capable of excluding, you know, gross negligence damages if it so wished. That's not the way the contract's written. You have the standard language that the unsophisticated insured is relying on. This has developed further. I can direct the court to, although it wasn't directly said in our reply brief, we do cite to and provide the court with our response to the summary judgment below, and we flesh this issue out in a little more detail. But essentially it's that there's multiple factors that go into an exemplary damages award. Some of them are directly punitive in nature, but some of them still refer to the exemplary nature of punitive damages, the objective seriousness of the award. And absent a direct finding from the Texas Supreme Court that these damages are excluded as a matter of public policy, we think that, you know, that goes beyond what the Texas Supreme Court has actually said in its majority opinion. Well, but the majority opinion balanced the right to contract against statutory overlay and held that in that situation, which is workers' comp, that they concluded that the absence of an exclusion for punitive damages was not controlling. So what's the statutory overlay that might apply in automobile policies? I don't have a statutory overlay, Your Honor. Our position would be that this balancing test needs to be struck on a case-by-case basis, and that distinguishes, I think it's important, from the ground that the district court originally ruled on, which is this general definition of accident that applies in all of these cases. If the court is inclined to take up the public policy question as opposed to following the Minter line and, you know, allowing a consideration of permissive use first, then, you know, I think it's important to make sure to correct the holding below before you move on to the specific case analysis. It'd be easier, more prudent if the record could be more fully developed, trying up the permissive use issue as it was in Minter. Minter was, as I started mentioning earlier, the second of two cases in that line before this court. The first one, in 2005, in 423 Federal 3rd, 460, held that there was a fact issue as to permission, you know, remanded, there was a trial on that issue, and only then did the court, on a full record, determine that public policy precluded insurance coverage. All right. Any questions? Is there a fact issue on the insured issue, on the permission? Absolutely, Your Honor. Yes. The, Mr. Sanchez directly, expressly testified that he had, he understood that he had plenary authority to use this vehicle for personal use. That testimony in and of itself, you know, across, like, cuts across the board, distinguishes all of Cincinnati's cases. It's not a situation, like, there's an absolute fact issue on that. The Cincinnati, I'm sorry, the insureds in the original personal injury action moved for summary judgment on negligent entrustment. Not only was that denied at the trial court level, but the jury ultimately found, you know, weighing the evidence of Mr. Sanchez's understanding, which in Texas law, you look to the insured's understanding of whether or not there's permission. And based on that testimony and the other evidence in the record, determined that he did have the right to use that vehicle, and that it was negligent for  Well, entrusting is one thing, but whether he ought to be covered is another thing, don't you think? It is another thing, Your Honor, which is why we have this second collateral litigation. But some of the same evidence still applies. And the fact of the matter, like, the permissive use line of cases all says that you look at the insured's understanding, and we have direct testimony from Mr. Sanchez that he doesn't remember seeing the policy that says he couldn't personal use. He thought it wasn't just that he could use it, you know, to get from place to place on his job or after hours. He thought this was his car, and that's what he testified to. And, you know, at a summary judgment stays, that's a fact issue for the jury to resolve. All right. I guess that's it. If you have time for rebuttal, if you choose. Thank you, Your Honor. I'd like to keep that. Just return the next 30 seconds. Thank you. Mr. Lankford. Thank you, Your Honor. The court, at the beginning of this hearing, asked us to cite the court to any portions of the record that we felt were important. And I believe, as far as we're concerned, the portions of the record that it's important for the court to focus on is 1442 through 1446. Those are the questions that were before them. And the first question with regard to negligence, I believe it indicates that the judge instructed the jury to find negligence. So the jury didn't do any independent evaluation. I think that's important because, as I understand the crux of the appellant's argument, it is arguing over what was the conduct. And, frankly, the initial jury question doesn't really define what the conduct is, but the court can parse through the record and try to decide what that conduct is. But then, and I think this is what's damaging to the appellant's case, you then go to the jury questions on gross negligence. And now, the jury answers the questions, and it's by clear and convincing evidence, not preponderance. And the jury is affirmatively finding that Mr. Sanchez, when viewed objectively from his standpoint at the time of the occurrence, involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others. And secondly, Mr. Sanchez has actual subjective awareness of the risk, but nevertheless proceeds with conscious indifference. Well, let me ask you a question about this. I think you're swinging for the rafters. Because if there's no accident here, this would change Texas automobile coverage very, very broadly, don't you think? If there was no accident. I mean, well, you know, I think it's maybe statistically reasonable that drunk drivers cause an inordinate amount of accidents. Drunk, and they may be inebriated because many things, including the increasingly legalized use of marijuana. But, well, that's right. And I've always assumed that if you got run into by a drunk driver, your insurance policy would cover it as an accident. But you're saying if the driver can get to trial and get a gross negligence instruction, it's not an accident, which means that it's never covered to begin with. Let's be clear. I mean, why would there have been a negligent entrustment if there was no accident? Fairfield wouldn't have had to cover Mr. Frederick's original damages, correct? Yes, Your Honor, but I think the point of the issue is with regard to negligence, which is going to be compensatory damages, which is going to be your medical bills, which is going to be- Accident is accident for compensatory or punitive, right? It can, depending on what conduct you're looking at, Your Honor. No, sir. That's the threshold to coverage. Well, what you're saying is- Right. Right. It is a threshold to coverage, but in order to determine if there is an accident, you have to look at the factors and the circumstances that constitute that. Well, let me give you another example. Suppose a person has poor eyesight and they have to drive with eyeglasses, and then something happens in the family so that they have to venture out onto the road without their glasses. Sure. And they have a collision. You're saying that a jury could determine in retrospect that was gross negligence and the insurance company would deny coverage. The gross negligence would not be covered. That's correct, Your Honor, because- But you're saying it's not an accident, therefore no coverage at all. The negligence finding, Your Honor, did not find that ... or the negligence finding did not speak to whether it was a fortuitous, unexpected, and unintended event. What we can conclude it was just on the facts of that accident, but when you go to ... you now have a finding by the jury that he knew what he was doing. He knew he was creating a hazard on the road. But I'm saying this. Any insurer would defend under a reservation of rights as to compensatory damages. Exactly correct, Your Honor. Yes. Can you answer Judge Jones's question? Was there an accident in the hypothetical about the glasses? With regard to a gross negligence finding, no. Is there an accident if someone is texting and runs through a red light? Yes, Your Honor. So what's the difference? I'm sorry. No, there's not. There's no accident. He knew what he was doing. There's no accident. He knew what he was doing. Is there an accident if someone is very tired? They're at the office late. They're working to midnight, say, hypothetically, and they drive home very, very tired and they run through a red light. And that's an excellent question, Your Honor, because you're now into the gray area. You're now into ... a jury has to evaluate what did he know? Did he appreciate the Oh, so there's a line between being very tired and texting. What about putting on makeup in the car? How about eating a sandwich while you're driving to work? You're getting personal. I understand. But you're now into the weeds of the jury's prerogative. No, we're trying to identify the injury-causing conduct. Sure. And if I understand Cincinnati's position, it is intentionally taking an act prior to the collision makes it not an accident. So intentionally drinking at the bar, intentionally texting, intentionally playing with the radio, intentionally getting very tired at the office, intentionally putting on makeup, intentionally driving without your glasses. All of those things would be sufficient to not make it an accident. It would not be an accident, Your Honor, if you knew the risk. You knew the magnitude of the risk that you were subjecting the public to and deciding to go ahead and roll the dice on it. Because gross negligence, as we know from the cases, the purpose of it is not compensation. It's punishment. It's punishment. What cases can you cite around the country that have held that gross negligence, I'm sorry, that drunk driving is not an accident under an auto policy? I don't have a cite to give you, Your Honor. Don't you think, I mean, as he said, don't you think that demonstrates something? Demonstrates that the issue has not been brought up? Yes. I mean, to be honest, if there's not a case out there, then yes. Can you at least acknowledge that as a matter of common parlance, that all the hypotheticals that Judge Oldham put forth are all accidents? This is a matter of what normal people, how normal people talk. I think a drunk driver who decides to get into the car drunk, gets himself drunk and gets in the car, knows he's at risk, which the jury found. Let me try this another way. Then it's not an accident. Let me try this another way. Is the term drunk driving accident an oxymoron? Probably so, Your Honor. You're just engaged in gibberish if you use that term? Well, we wouldn't use those terms, but potentially yes, Your Honor. What about somebody who's driving very quickly to the hospital because she's in labor? That's an emergency situation, Your Honor. That is a very different situation. But if she intentionally runs a red light because she's trying to get to the hospital? Well, hopefully it's the husband. Yeah, it doesn't matter who's driving. It could be the husband. The focus of the gross negligence finding is the state of knowledge, the intent of the driver. Do you think we should certify this to the Texas Supreme Court if there appears to be no definitive authority on it? That's an interesting notion that I hadn't thought about, Your Honor, but I think there's enough here. You're asking us to make a decision that would be extremely consequential for auto insurance liability. I guess I'm asking, Your Honor, that. It would mean that everybody who re-ups for their auto insurance is going to have to start answering questions about how often do you consume alcohol? Do you consume illegal drugs? And if you're not, pardon me? I'm sorry. I think some of them actually do kind of ask those types of questions. I hear the Court's concern. Well, suppose you lose on that issue. Suppose we disagree, and you're free to make the arguments, and I'm not saying that we have prejudged that issue, but suppose that we disagree with Judge Rodriguez, then what do you say about the insured and the punitive damage issues? You mean the public policy, or I'm not sure? Your other issues that you raised on appeal. Yeah, I mean that the public policy of Texas is that they don't want to insure gross negligent conduct. The purpose of punitive damages is to punish, and I think that's what Fairfield and Moriel  It's to punish rather than to compensate. And the question that you're asking me is, is it right for the punishment that by state law is supposed to be awarded on the driver, whether the driver can then lateral that punishment to the insurance carrier and pay for it? And then the whole purpose behind the policy is gone because someone else is paying for what the state law wanted him to pay for. So I've Candidly to me, that strikes me as a potential question for certification as well. To my mind, the cleanest argument for you for affirmance is the insured issue. It sounds like opposing counsel has presented a fact dispute. You want to address that? Yeah, I think when you take a deep dive into the record, the only factual dispute is Mr. Sanchez saying, I thought I was able to drive because nobody told me I didn't have to. And so I assumed that I could. And there's replete in the record evidence of documents that he's signed that he's not supposed to drive on personal business, never supposed to drive when he's drunk. There's lots of instances in the record on that that indicate he knows that can, I guess the question for the court would be, can a question of fact, despite a mountain of contrary evidence, can that be contradicted by the mere statement of, I thought I could because no one told me I couldn't. And it doesn't matter how many documents that I've signed. And I believe, I don't have it right in front of me, but I believe the standard, according to the U.S. Supreme Court in Anderson v. Liberty, is no reasonable trier of fact could have found for the non-movement on a summary judgment. And I just don't think they can, Your Honor. Did you defend the liability case at trial? No, Cincinnati did. I did not. Okay. Interesting. Okay. But what was- Conflict, Your Honor, that's coverage versus- Right. Yeah. What would have been the situation with the negligent entrustment then? I mean, if he was clearly driving against company policy, nevertheless, the jury found that the company negligently entrusted. I believe the judge instructed the jury to find negligence against the company. I believe the comparative negligence was 40 percent against the company, 60 percent against the driver, and they did not find gross negligence against the company. Right. Okay. But he instructed negligent- That's sort of unusual. I'm sorry. He did not instruct gross negligence. He instructed the negligence finding. Right. But, I mean, isn't that a negligent entrustment? He instructed that? Or did the jury find it? He instructed the jury to find negligence, Your Honor. I'm talking about against Cincinnati. I mean, against the employer. Yeah, I do. I mean, that seems highly unlikely, but I could be wrong. I don't- Well, maybe Mr. Schnitzer can answer that. I was just wondering because it seemed to me if there was a fact issue on negligent entrustment, there would most likely be a fact issue on insured status. I don't know. I don't have before me, Your Honor, what the exact negligence submission to the jury was. I only know that the verdict only asked about negligence, and they were instructed to find it. So if I was under the impression that the Cincinnati had paid all of Mr. Frederick King's regular damages- Yes, Your Honor. That is correct. Despite the 40 percent finding. That is correct, Your Honor. They paid for both, as I recall. That's very generous. Oh, because they considered, so they were treating Sanchez as if he was an employee for that purpose, I suppose. They made a hard distinction between negligence finding and a gross negligence finding. I see what you're saying. Interesting. Okay. Can I answer any other questions? Can we go back to the insured question for a second? Who's insured under the policy? So- Sure. I'm looking at Section 2B that says anyone else using- provides to Advantage. It says anyone who's using the auto with your permission. So that seems to be the key question is who has your permission. And then as I understand the way this works is that Advantage provides to Mr. Sanchez and other people who they're authorized to use their vehicles a series of other documents that say things like don't drink and drive, don't use personal errands, that kind of stuff. Yeah. Are those Cincinnati documents? The documents that Advantage provides to its employees and contractors and other people who are using its vehicles, are those also part of the Cincinnati policy or are those things that Advantage does vis-a-vis its employees without the insurance company's knowledge, involvement, contractual obligation, et cetera? I would have to be totally honest with you, Your Honor. I don't know the answer to that question. But I know from just from having practice in the area that I do not think that those documents are provided to Cincinnati. But I really don't know. Okay. Thank you. Anything else? Thank you. I don't think so. Don't think that we don't find it an interesting case because we do. Yes. Mr. Schnitzer. Thank you, Your Honor. Very briefly to answer the court's question about the jury charge. The record on appeal at 1442 is that page of the jury charge. The court instructed the jury to answer yes as to Carlos Javier Sanchez regarding negligence. There was no instruction as to Advantage. Essentially. So the jury made a finding on negligent entrustment? Correct, Your Honor. Okay. Two very brief points, Your Honor. And I think the first one was essentially made for me earlier. What we have here, the stakes are, for the definition of accident, because it's in the general liability clause of coverage. You can't have a situation where alleging gross negligence or alleging, you know, some sort of intentional serious prior act pleads out of coverage. I mean, that's not Texas law. And I think the court understands that. As to the permissive use issue that was briefly brought up by Judge Ho. Again, the district court expressly didn't reach that issue. That sort of review of the full record, that's a classic issue for a district court on first impression. If there's credibility issues involved, obviously we go all the way to a full trial on this issue, rather than determining the credibility and context and having some sort of judicial decision as to, you know, why Mr. Sanchez testified so clearly the way that he did. There's not anything else I can return the balance of my time. All right, I guess so. Well, thank you very much. It's a real interesting case. Court will stand in recess until nine o'clock tomorrow morning.